UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| United States of America, | No. 2:08-cr-00093-KJM |
|---|---|
| Plaintiff, | No. 2:08-cr-00116-KJM |
| v. | ORDER |
| Charles Head, | |
| Defendant. | |

Charles Head moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). He argues he is at increased risk of severe illness from COVID-19 and that "changed circumstances" warrant either a reduction in his lengthy sentence to time served or a reduced sentence to correct an unwarranted sentencing disparity. The government opposes. For the following reasons, the court **denies** the motion.

I.  BACKGROUND

Charles Head was the leader and organizer of two large and sophisticated mortgage fraud schemes: a "foreclosure rescue" scheme and an "equity stripping" scheme. *See* Presentence Investigation Rep. (PSR) ¶¶ 1–23; *Head I* Superseding Indictment at 2,[1] ECF No. 303; *Head II*

---

[1] In this order, the court will continue the convention of referring to this case (case number 2:08-cr-093-KJM) as "*Head I*." The court will refer to Head's second case (case number 2:08-cr-116-KJM) as "*Head II*."

1

1  Superseding Indictment at 2, ECF No. 153. Both schemes operated with the same goal: to target
2  homeowners in financial distress and, through false and fraudulent representations, obtain title to
3  their properties and steal any existing equity in their homes. PSR ¶¶ 3, 11. Ultimately, Head and
4  his coconspirators defrauded hundreds of lenders and financially vulnerable homeowners out of
5  tens of millions of dollars. *Id.* ¶¶ 9, 17.

6  On May 30, 2013, after a sixteen-day trial, a unanimous jury found Head guilty of
7  conspiracy to commit mail fraud and four counts of mail fraud related to his "foreclosure rescue"
8  scheme. *See* May 30, 2013 Hr'g Mins., ECF No. 770; *Head I* Verdict, ECF No. 773. On
9  December 2, 2013, after a separate eighteen-day trial, a different unanimous jury found Head
10 guilty of conspiracy to commit mail fraud and three counts of mail fraud related to his "equity
11 stripping" scheme. *See* Dec. 2, 2013 Hr'g Mins., ECF No. 459; *Head II* Verdict, ECF No. 463.
12 All in all, Head was convicted of seven counts of mail fraud and two counts of conspiracy to
13 commit mail fraud.

14 Head's advisory Guidelines range was life in prison, which by operation of law was
15 reduced to the statutory maximum of 180 years. *See* PSR at 5. On September 11, 2014, this court
16 sentenced Head to 210 months for his conviction in *Head I*, and 210 months for his conviction in
17 *Head II*. *See Head I* J. and Commitment, ECF No. 983; *Head II* J. and Commitment, ECF No.
18 583. The court ordered the sentences to run consecutively for a total of 420 months, or 35 years,
19 a 145-year downward variance from the 180-year Guidelines recommendation. *See Head I* J. and
20 Commitment at 3; *Head II* J. and Commitment at 3. Head was also ordered to pay a total of
21 $17,097,950.47 in restitution. *See Head I* Am. J. at 6, ECF No. 1191 ($9,534,240.21); *Head II*
22 Am. J. at 6, ECF No. 653 ($7,563,710.26).

23 Head, through appointed counsel, now moves to reduce his 420-month sentence, of which
24 he has served roughly one-third, to time served under 18 U.S.C. § 3582(c)(1)(A)(i). *See*
25 *generally* Mot., ECF No. 1734. Alternatively, he requests a reduction in his sentence to 210
26 months to avoid an unwarranted sentencing disparity with his co-defendants. *Id.* The
27 government opposes, primarily on the grounds that Head refused the COVID-19 vaccine, and
28 because the relevant 3553(a) factors do not warrant a reduction to Head's sentence. *See generally*

2

Opp'n, ECF No. 1736.  It is not clear from the record whether Head refused the vaccine or whether, as Head claims, the BOP refused to give him the vaccine.  *See* Reply at 2, ECF No. 1746.  In any event, Head has now received at least two vaccine shots after having contracted COVID-19.  *See* BOP Immunizations at 2, Gov't's Resp. Ex. 1, ECF No. 1749-1.  The government still opposes.  *See generally* Gov't Resp., ECF No. 1749.  Head responded.  *See* Def.'s Suppl. Br., ECF No. 1750; Suppl. Exs., ECF No. 1753.  The court submitted the motion without oral argument and resolves it here.

## II.  LEGAL STANDARD

The district court that imposed a custodial sentence can modify the term of imprisonment under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018.  The defendant must first exhaust administrative remedies.  *Id.* § 3582(c)(1)(A).  If a defendant has exhausted administrative remedies, the analysis is twofold.  First, to grant relief, the court must find "extraordinary and compelling reasons warrant" the requested reduction.  *Id.* § 3582(c)(1)(A)(i).  Second, the court must consider the same factors that were applicable at the original sentencing, enumerated in 18 U.S.C. § 3553(a), to the extent they remain applicable.  *See id.* § 3582(c)(1)(A).

Although the Ninth Circuit has not expressly decided which party "bears the burden in the context of a motion for compassionate release brought pursuant to § 3582(c) as amended by the [First Step Act], district courts to have done so," including this court, "agree that the burden remains with the defendant."  *United States v. Mathews*, 557 F. Supp. 3d 1057, 1061 (E.D. Cal. 2021) (internal quotation marks and citation omitted).

## III.  ANALYSIS

The parties do not dispute that Head has exhausted his administrative remedies as required by § 3582(c).  Mot. at 19–20; Opp'n at 7.  Thus, the remaining questions are whether (1) Head's request is supported by "extraordinary and compelling" reasons, and (2) the relevant § 3553(a) sentencing factors weigh in favor of a reduction.  Because the absence of either condition forecloses a sentence reduction, the court need not address these questions in any particular order.  *See United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021) ("[A]lthough a district court must perform this sequential inquiry before it *grants* compassionate release, a district court that

properly *denies* compassionate release need not evaluate each step." (emphasis in original)). Head has submitted evidence and testimony regarding numerous conditions he argues may put him at increased risk from reinfection with COVID-19, particularly at FCI Cumberland, where he was housed.² *See generally* Mot.; Suppl. Br.  Assuming without deciding that Head's asserted health conditions, his having tested positive for COVID-19, and the circumstances of his incarceration weigh in his favor, separately or in combination, Head has not shown that the applicable sentencing factors of § 3553(a) weigh in favor of a reduction of the court's below-guideline sentence, as discussed below.

Guided by 18 U.S.C. § 3553(a), the court considers four groups of factors here.  First, the court reflects on the "nature and circumstances of the offense."  *See* 18 U.S.C. § 3553(a)(1). Head's crimes, while non-violent, were extremely serious and harmful:  He led two large and sophisticated schemes that resulted in a loss of at least $22,658,446.42, including to many persons who lost their homes.  *See* PSR at 10.  Specifically, as the court summarized at Head's sentencing hearing:

> [Head] create[d] and implement[ed] a very cynical repair scheme. . . Because of the nature of those he targeted through targeted mailings . . . he naturally identified people who were very vulnerable.  The Court has heard this morning and has read in the letters of the victims the human dimension of that vulnerability.  There are many different reasons why folks found themselves to be so vulnerable.  Sometimes it was health.  Sometimes it was family member's health, loss of a job. Often those persons went looking for the right fit for their particular distress[ed] situation, and they found Mr. Head.  He not only took advantage of them, he took advantage of gaping holes in the system. . . . And ultimately, for many, in fact most of the victims, there was loss of a home, which was central to their personal and financial stability.  And so the nature of the offense is a very serious one and argues for a very significant sentence.

J. & Sentence Tr. at 52:14–53:23, ECF No. 1058; *cf. United States v. Samchuk*, No. 12-cr-66-KJM, 2021 WL 2577012, at *4 (E.D. Cal. June 23, 2021) (describing offense resulting in much lower $739,362 loss to victim banks as "undeniably serious").

---

² Head has since informed the court, in an unrelated filing, that he has been transferred to FCI Mendota.  *See* Mot. at 1, ECF No. 1787-1.

4

Second, and relatedly, the court considers the history and characteristics of the defendant. *See* 18 U.S.C. § 3553(a)(1). Head argues his history and characteristics now appear in a very different light than they did at the time of sentencing. *See* Mot. at 38–42. Specifically, Head notes that "[t]wo prior cases that informed the Court's sentencing choice . . . have been dismissed—the possession of an assault rifle misdemeanor that accounted for three points of his four-point criminal history score, and the Pennsylvania charges that formed the sole basis to revoke his pretrial release." *Id.* at 12. Thus, Head argues, if he were sentenced today, a "significantly lower sentence would be warranted" because his "criminal history score would be 1 instead of 4, resulting in a criminal history category of I. And as the Pennsylvania case no longer exists, it is not a proper basis to find Mr. Head was not compliant with pretrial release." *Id.* at 38.

Neither of these changed circumstances warrant a lower, much less a "significantly lower," sentence. The relevant 2013 Sentencing Table recommends life imprisonment for anyone with a total offense level of at least 43. *See* United States Sent'g Comm'n, Guidelines Manual, ch. 5, pt. A (Nov. 2013). This is true whether a defendant's criminal history category is zero or "13 or more." *Id.* Head's offense level, which remains unchanged, was 47. PSR at 18. Thus, although it does appear Head's conviction for possession of an assault rifle, which accounted for three points of his four-point criminal history score, was overturned on the grounds that he was "factually innocent" of the offense, *see* Stipulation to Plea Withdrawal, Mot. Ex. D, ECF No. 1734-1, this would not have changed the Guidelines range of life imprisonment. Nor would it have changed this court's ultimate conclusion that the appropriate sentence for Head's crimes was 420 months.

The same is true of the felony and misdemeanor charges Head faced for being the alleged owner of "69 Entertainment" while on federal pretrial release. As an initial matter, unlike the charge for possession of an assault rifle, Head does not claim he was innocent of this offense. Rather, the case was dismissed for failure to prosecute. *See* Docket, Mot. Ex. B, ECF No. 1734-1. In any event, those then-pending charges contributed neither to Head's total offense level nor to his criminal history category, and the court did not rely on them in making its sentencing decision. Rather, in sentencing Head, the court's only reference to these charges was a passing

5

one, noting that "during his time on pretrial release, it hasn't been disputed by the defense that there were misrepresentations made to the Court as to what he was doing during that period of pretrial release." J. and Sentence Tr. at 54:7–10. The dismissal of these charges does not warrant reducing Head's sentence to time served.

Third, the court considers the length of Head's sentence in assessing the appropriateness of release. *See* § 3553(a)(2). Head has served 134 months of his original 420-month sentence; this amounts to roughly 32 percent of his original sentence. A nearly 70-percent reduction of Head's original 420-month sentence would not reflect the seriousness of his offense, promote respect for the law, or fulfill the need for "just punishment." 18 U.S.C. § 3553(a)(1), (a)(2)(A); *see* J. and Sentence Tr. at 53:24–54:2 ("[T]here is a need for a significant sentence to reflect the seriousness [of the offense and] to promote respect for the law."); *cf. United States v. Doty*, No. 18-cr-34, 2020 WL 3440948, at *3 (S.D. W. Va. June 23, 2020) (analyzing factors set forth in § 3553(a)(2)(A)–(B) in case factually analogous to Head's; finding it "very significant" that defendant had served less than a third of her sentence). Nor would it adequately deter criminal conduct. *See* § 3553(a)(2)(B).

Finally, the court considers the need to "protect the public from further crimes" and "any pertinent policy statement" from the Sentencing Commission, including considering any dangers early release might pose to the community. *See* 18 U.S.C. § 3553(a)(2)(C), (a)(5); *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). Although Head is serving time for serious offenses, his crimes did not involve allegations of violence or threats of violence; nor did they involve firearms or other dangerous weapons. Aside from the convictions for which Head is currently imprisoned, Head also has convictions for two separate 2006 incidents, one for driving without a driver's license, and another for hit-and-run property damage and battery. PSR at 13.[3] Finally, during his 134 months in prison, Head has received only four minor and non-violent "prohibited

---

[3] As noted, the PSR also lists a conviction for possession of an assault weapon and pending felony and misdemeanor charges for Head's alleged ownership of "69 Entertainment." Head's conviction was later overturned on the grounds that Head is "factually innocent" of the offense, *see* Stipulation to Plea Withdrawal, Mot. Ex. D, ECF No. 1734-1, and the "69 Entertainment"-related charges were dismissed for failure to prosecute, *see* Docket, Mot. Ex. B, ECF No. 1734-1.

act violations," *see* Inmate Disciplinary R. at 8, Opp'n Ex. 3, ECF No. 1736-1, and he has a positive history of rehabilitation, including positive work reviews, completion of a variety of educational and self-help courses, and teaching and mentoring fellow inmates, *see, e.g.*, Work Assignment Summ. at 7, Mot. Ex. C, ECF No. 1734-1 (noting Head receives "good work performance ratings" and describing him as "hard worker"); Education Summ. at 7, Mot. Ex. C, ECF No. 1734-1 ("Head has completed a plethora of educational programs throughout his incarceration. He also taught real estate courses as part of Education's Adult Continuing Education program."); *see generally* Head Decl., Mot. Ex. E, ECF No. 1734-1 (describing rehabilitation efforts). On the record before it, the court cannot conclude that Head has a violent nature or that he would put the community in physical danger if released.

On balance, the relevant sentencing factors weigh against granting Head's motion for compassionate release.

Still, Head argues that even if the court decides against reducing his sentence to time served, application of the § 3553(a) factors to his present circumstances supports a sentence reduction to avoid an unwarranted disparity when comparing his sentence to that of his co-defendants, especially his brother Jeremy Head. *See* Mot. at 42–47. The "present circumstances" he points to include (1) "his reduced criminal history score," (2) "the fact that the Pennsylvania case has been dismissed," (3) "his extraordinary post-sentencing rehabilitation," and (4) his infection with COVID-19. *Id.* at 42. As discussed above, Head's reduced criminal history score and the dismissal of the Pennsylvania charges are of minimal, if any, significance. And while the court acknowledges and commends Head for his post-sentencing rehabilitation, it cannot say his progress rises to the level of "extraordinary." It does not warrant reconsidering whether maintaining Head's sentence creates an unjustified sentencing disparity between Head and his codefendants, a question this court has addressed on numerous occasions. *See, e.g.*, J. and Sentence Tr. at 55:6–9, ECF No. 1058 ("It is important that the Court attempt to avoid unwarranted disparities, to make certain, all things considered, that I'm treating Mr. Head equally and fairly under the law.").

/////

The court once again notes that there was good reason for Head's receiving the greatest sentence. He was the leader and organizer of the massive mortgage fraud and foreclosure rescue fraud conspiracies for which he is serving time. As the government states in its opposition:

> This Court presided over the sentencing of 18 people who were led (or re-led) into a life of crime by Charles Head. Every one of them is now a convicted (or again-convicted) felon, courtesy of Head's siren song of easy money: he told the co-conspirators that the victims were all "fuck-ups," "dumb and naïve," and that his co-schemers had to just "keep the money coming in" for Head's benefit. PSR ¶¶ 19–22.

Opp'n at 13. And as the probation officer stated in Head's Presentence Investigation Report:

> The way [Head] and his conspirators treated and took advantage of the [hundreds of] victim homeowners was egregious, aggressive, and heartless. [Head's] motive was greed. The characteristics of this case, specifically, the intent to evict the homeowners, distinguishes it from the typical fraud cases. [Head's] attitude toward his criminal conduct is offensive. This crime has caused the victims financial and emotional harm and, in some cases, led to medical problems related to their victimization. [Head, whose applicable guideline range is life imprisonment,] is the most culpable in this case and should be sentenced accordingly.

PSR at 21. Head's present circumstances do not change this conclusion or warrant shortening his below-Guidelines 420-month sentence. His motion for compassionate release is **denied**.

IV. **CONCLUSION**

Head's motion for compassionate release, ECF Nos. 1734 & 975, is **denied**.

This order resolves ECF Nos. 1734 & 975.

IT IS SO ORDERED.

DATED: June 6, 2022.

CHIEF UNITED STATES DISTRICT JUDGE